Judith Weinstock
Assistant Regional Director
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-9078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
|  | : | 15 Civ. 5704 |
| Plaintiff, | : | |
|  | : | |
| -against- | : | |
|  | : | (ECF CASE) |
| JOSHUA SAMUEL AARON, GERY SHALON, and ZIV ORENSTEIN | : | |
|  | : | |
| Defendants. | : | |

---

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER PERMITTING SERVICE BY EMAIL AND/OR PUBLICATION UPON DEFENDANT JOSHUA SAMUEL AARON PURSUANT TO RULE 4(f) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Plaintiff Securities and Exchange Commission (the "Commission") submits this memorandum in support of its motion for an order permitting it to serve defendant Joshua Samuel Aaron ("Aaron") by email and/or publication pursuant to Federal Rule of Civil Procedure ("FRCP") 4(f). As explained below, despite its efforts to do so, the Commission has been unable to serve Aaron through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"). Service by email and/or publication comports with constitutional due process concerns, and would advance the interests of the administration of justice.

## BACKGROUND

### A.   The Commission's Complaint and Parallel Criminal Matter

This case was brought in July 2015, seeking injunctive relief, disgorgement, civil money penalties, and prohibitions from participating in offerings of penny stock. The Complaint[1] charges three defendants -- Aaron, Gery Shalon ("Shalon"), and Ziv Orenstein ("Orenstein") (the "Defendants") -- for their collective participation in multiple "pump-and-dump" schemes dating back to at least mid-2011. The Complaint alleges that Aaron, Shalon and Orenstein touted penny stocks in order to unlawfully profit from the short-term increase in the price and trading volume of each stock caused by their promotional campaigns. These promotional campaigns frequently urged people to buy shares of the promoted issuers without properly disclosing that the promoters themselves owned shares of these issuers and, contrary to their exhortations to readers of their emails to buy shares, intended to sell those shares immediately. Among other things, Aaron wrote, created, and helped design the email and website promotions. The microcap issuers involved are Southern Home Medical Equipment, Inc.; Greenfield Farms Grassfed Beef, Inc.; Next Generation Energy Corporation; Mustang Alliances, Inc.; IDO Security, Inc.; and Premier Brands, Inc.

On the same day that the Commission commenced this action, the United States Attorney announced criminal charges against the Defendants, including securities fraud, in a parallel

---

[1]     The Commission filed the Amended Complaint on July 24, 2015. A copy of this Complaint is attached to the accompanying declaration of Judith A. Weinstock ("Weinstock Decl.") as Exhibit 1.

criminal matter.[2]  These charges were superseded on November 10, 2015.  Orenstein and Shalon were arrested in Israel on these charges.[3]  Aaron has not yet been apprehended.[4]

The criminal charges, and the Commission's action, received significant media attention, including coverage in the Wall Street Journal, the New York Times, Reuters, and Bloomberg. This matter also received coverage in many international news outlets, including the websites of the Jerusalem Post and the Times of Israel.

**B.    The Commission's Attempt to Serve Aaron**

Aaron is a United States citizen, but during the time frame of Aaron's schemes, he resided in Tel Aviv, Israel.  Accordingly, the Commission attempted service on Aaron at his last known address in Tel Aviv via the process set forth in the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), to which both the United States and Israel are signatories ("Contracting States"). In August 2015, the Commission forwarded the Summons and Complaint, as well as the ECF Rules, Individual Rules & Practices of Judge Abrams, and the Notices of Appearance, to the Administration of Courts (the central authority designated by Israel for the receipt of Hague Convention documents in 1962.[5])  In October 2015, the Commission received a Certificate from

---

[2]     The superseding criminal indictment and associated press release are attached to the accompanying declaration of Weinstock Decl. as Exhibits 2 and 3.

[3]     The Commission has served Orenstein in this action via the Hague Convention. See Docket 25.  The Commission is awaiting information from the Administration of Courts of Israel as to whether Shalon has been successfully served.

[4]     The FBI's Wanted Notice is attached as Exhibit 4 to the Weinstock Decl.

[5]     Article 2 of the Hague Convention provides for each Contracting State to designate a Central Authority which receives requests for service from other Contracting States.  Provided the request is in the proper form, the Central Authority then effects service of process and returns a certificate of service to the serving party pursuant to the

the Israeli authorities, dated October 12, indicating that "the recipient has moved to an unknown address."[6] Accompanying the letter were all of the materials the Commission had sent to the Administration of Courts, including the Summons and Complaint. Accordingly, despite the Commission's efforts, Aaron has not been served with the Summons and Complaint in Israel through the Hague Convention.

Upon information and belief, Aaron is currently residing in Russia, and, as recently as November 2015, was sending emails from a gmail email account.[7] According to the United States Department of State, although Russia is a signatory to the Hague Convention, in July 2003, Russia unilaterally suspended all judicial cooperation with the United States in civil and commercial matters. See U.S. Department of State website, http://travel.state.gov/content/travel/en/legal-considerations/judicial/country/russia-federation.html. Thus, as a practical matter, service on Aaron in Russia pursuant to the Hague Convention is not an available option.

---

procedures set forth in Articles 3 to 6 of the Hague Convention. Israel acceded to the Hague Convention in 1962.

[6]     See Weinstock Decl. Exhibit 5. The Certificate had an alternative field stating that "[t]he provided address is incorrect" which was not checked off, suggesting that Aaron had resided at that address at some point in the recent past.

[7]     According to a Bloomberg article published on July 22, 2015, "Aaron and his wife were in St. Petersburg as recently as Sunday, based on social-media posts from her account." http://www.bloomberg.com/news/articles/2015-07-21/fbi-israel-make-securities-fraud-arrests-tied-to-jpmorgan-hack (Weinstock Decl. Exhibit 6).

## ARGUMENT

### THE COURT SHOULD PERMIT THE COMMISSION TO SERVE AARON BY ALTERNATIVE MEANS, AS PROVIDED BY FRCP 4(f)

Service of process on a foreign party is governed by FRCP 4(f), which provides three methods of service:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the [Hague Convention];
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . or
>
> (3) by other means not prohibited by international agreement, as the court orders.

As discussed above, the Commission has made an attempt to serve Aaron through the Hague Convention, at his last-known address for which it had information indicating he may have resided, only to receive information suggesting that Aaron could not, in fact, be served.[8]  In situations such as this one, where a party attempts service through the Hague Convention and receives information indicating that the address used is incorrect, courts have found that the Hague Convention does not apply.  See, e.g., CFTC v. Lake Shore Asset Mgmt. Ltd., No. 07 C

---

[8]      Courts appear to be split as to whether a plaintiff must first attempt to serve a foreign defendant residing in a Contracting State through the Convention pursuant to FRCP 4(f)(1) before seeking alternative means of service pursuant to FRCP 4(f)(3). Compare In re LDK Solar Secs. Litig., C 07-05182 WHA, 2008 WL 2415186, at *2 (N.D. Cal. June 12, 2008) ("FRCP 4(f)(3) stands independently of FRCP 4(f)(1); it is not necessary for plaintiffs to first attempt service through internationally agreed means before turning to any other means not prohibited by international agreement") (citation and quotation omitted) with RSM Prod. Corp. v. Fridman, 06 Civ. 11512 (DLC), 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007) ("service on a foreign defendant pursuant to the [Hague Convention] is mandatory when serving a defendant who resides in a foreign country that is a signatory to the convention").  The Court need not decide this issue here because, as noted above, the Commission has attempted service through the Hague Convention.

3598, 2008 WL 4299771 at *4 (N.D. Ill. Sept. 17, 2008); BP Prods. North Am., Inc. v. Dagra, 236 F.R.D. 270, 271 (E.D. Va. 2006); see generally, Hague Convention, 20 U.S.T. 361 (U.S.T. 1969), Article I ("This Convention shall not apply where the address of the person to be served with the document is not known").  Accordingly, the Hague Convention does not govern service of process here.

A court may fashion alternative means of service pursuant to FRCP 4(f), provided that the designated method complies with the due process requirement that it be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Smith v. Islamic Emirate of Afghanistan, 01 Civ. 10132 (HB), 01 Civ. 10144(HB), 2001 WL 1658211 at *2 (S.D.N.Y. Dec. 26, 2001) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)); Popular Enter., LLC v. Webcom Media Group, Inc., 225 F.R.D. 560, 561 (E.D. Tenn. 2004) (same).  "Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant."  Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 115 (S.D.N.Y. 2010).  In addition, "a plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)."  Stream SICAV v. Wang, 989 F.Supp.2d 264, 278 (S.D.N.Y. 2013).  And, "the decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court."  In GLG Life Tech Corp. SEC Litig., 287 F.R.D. 262, 265 (S.D.N.Y. 2012) (citation and quotation omitted).

Accordingly, the Commission requests permission from this Court to serve Aaron by the alternative means of email and/or publication.  In the instant case, each method of alternative

service will advance the administration of justice while protecting the defendant's due process rights.

**A.    This Court Should Permit the Commission to Serve Aaron via Email Pursuant to FRCP 4(f)(3)**

The Commission proposes that the Court enter an order permitting it to serve the Summons and Complaint to Aaron via email.  Service by email is appropriate under Rule 4(f)(3) in some circumstances and "[a]s a general matter, 'in those cases where service by email has been judicially approved, the movant supplied the [c]ourt with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address.'"  NYKCool, A.B. v. Pacific Intl. Services, Inc., No. 12-CV-5754, 2014 WL 3605632, at *4 (S.D.N.Y. July 15, 2014) (quoting Fortunato v. Chase Bank USA, N.A., No. 11-CV-6608, 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012).  For example, "courts have upheld service via e-mail [in] ... cases [that] involved email addresses undisputedly connected to the defendants and that the defendants used for business purposes."  Ehrenfeld v. Salim a Bin Mahfouz,  No. 04 Civ. 9641 (RCC), 2005 WL 696769 at *3 (S.D.N.Y. March 23, 2005); see also NYKCool, 2014 WL 3605632 at *4 (same).  See also Philip Morris USA Inc. v. Veles Ltd., No. 06-CV-2988, 2007 WL 725412 at *2 (S.D.N.Y. 2007) ("[F]ederal courts have approved email service of process as an appropriate means under Rule 4 in proper circumstances.").

Moreover, there is precedent for service via email in Russia under FRCP 4(f)(3).  In AMTO, LLC v. Bedford Asset Mgmt., LLC, No. 14-CV-9913, 2015 WL 3457452 at *7 (S.D.N.Y. 2015), the court noted that Russia has not explicitly objected to service by electronic means, and concluded that service via email for a defendant residing in Russia qualified as an alternative means of service under Rule 4(f)(3).  Id. at *7.  See also, Willens v. Automatic, Inc., No. C 14-02419 LB, 2015 WL 498745 (N.D. Cal. Feb. 5, 2015) (same); Henry F. Teichmann

Inc. v. Caspian Flat Glass OJSC, 2:13-cv-458, 2013 WL 1644808 (W.D. Pa. April 16, 2013) (same).

Here, Aaron used an email address multiple times as recently as November of 2015. Consequently, Aaron is "likely to receive the summons and complaint at the given email address." NYKCool A.B., 2014 WL 3605632 at *4 (quoting Fortunato v. Chase Bank USA, N.A., No. 11 Civ. 6608 (JFK), 2012 WL 2086950 at *2 (S.D.N.Y. June 7, 2012). Service upon Aaron via email comports with constitutional notions of due process while promoting the speedy administration of justice.

**B.   This Court Should Permit the Commission to Serve Aaron by Publication Pursuant to FRCP 4(f)(3)**

Courts have repeatedly found service by publication meets the due process standard. SEC v. Tome, 833 F.2d 1086, 1093 (2d Cir. 1987) (service by publication in the International Herald Tribune appropriate under FRCP 4(f)); Islamic Emirate of Afghanistan, 2001 WL 1658211, at *3 (service by publication in newspapers and other media outlets appropriate); BP Prods. North Am., Inc., 236 F.R.D. at 272-73 (service by publication appropriate where exact address unknown). Courts have also noted that, where there are indications that the defendant has actual notice of the proceeding, alternative service pursuant to FRCP 4(f) may be particularly appropriate. Tome, 833 F.2d at 1093; Gurung v. Malhotra, 279 F.R.D. 215 (S.D.N.Y. 2011) (service by publication and email on defendant in India permissible, especially when defendant has notice of the action); Salomon Bros., Inc. v. Huitong Int'l Trust and Inv. Corp., 94 Civ. 8559 (LAP), 1997 WL 324051 at **2-3 (S.D.N.Y. June 13, 1997) (service on U.S. counsel).[9]

———————————

Where there are no such indications of the defendant's actual notice, courts consider the likelihood of the defendant possessing some knowledge that he might be subject to a suit when determining whether service by publication is appropriate. BP Prods. North Am., Inc., 236 F.R.D. at 272 (citing cases). The likelihood of the defendant possessing such knowledge is particularly strong where the underlying case has high visibility. See Islamic Emirate of Afghanistan, 2001 WL 1658211 at *3 (service by publication on Osama Bin Laden permissible "since Bin Laden can be presumed to know that the estates of the victims would file civil cases against him in this district arising from the attack on the World Trade Center for which he has been widely held accountable").

The instant case has been widely-publicized and has received extensive media coverage in both the U.S. and abroad, consequently suggesting that Aaron has actual notice of this proceeding. But even if he does not have actual notice, publication in the New York Times in Russia[10] would be reasonably calculated to provide him with such notice. Accordingly, the Commission respectfully submits that service by publication is appropriate here. The Commission proposes that such publication be governed by Rule 316 of the New York Civil Practice Law and Rules (CPLR), which sets forth the requirements for service by publication. See, e.g., SEC v. Anticevic, No. 05 CV 6991 (KMW), 2009 WL 361739 at *5 (S.D.N.Y. Feb.

---

[9]    Actual notice cannot by itself, however, serve as a substitute for service of process. Ebanks v. Ebanks, 07 cv 314, 2007 WL 2591196, *3 (S.D.N.Y. Sept. 6, 2007) (citing cases).

[10]    The Eastern European version of the New York Times is printed in English. As set forth in the SEC complaint and indictment, Aaron is a United States citizen. According to media reports, Aaron attended Florida State University (see "WANTED: The FBI is searching for one of the people charged in the JPMorgan hacking case", http://www.businessinsider.com/fbi-searching-for-joshua-aaron-2015-11, included as Exhibit 7 to the Weinstock Decl.).

13, 2009) (adopting CPLR 316 for its order for service by publication).  Rule 316 of the CPLR

provides that an order for service of a summons by publication shall:

> direct that the summons be published together with the notice to the
> defendant, a brief statement of the nature of the action and the relief
> sought . . . the sum of money for which judgment may be taken in case of
> default . . . in two newspapers, at least one in the English language,
> designated in the order as most likely to give notice to the person to be
> served, for a specified time, at least once in each of four successive weeks.

In order to meet these criteria, the Commission proposes that the Court enter an order

permitting it to publish the Summons and notice to Aaron, along with a brief statement of the

nature of the case and the relief sought,[11] once weekly for four consecutive weeks, in the Eastern

European edition of the New York Times. Such service has been found to comport with the

notions of due process.  Hausler v. JP Morgan Chase Bank, N.A., No. 09 Civ. 10289 (VM), 2015

WL 5853952 at *3 (Oct. 2, 2015), quoting SEC v. Shehyn, No. 04-cv-2003, 2008 WL 6150322,

at *3 (S.D.N.Y. Nov. 26, 2008).

---

[11]     Given the complexity of calculating the exact amount of disgorgement and
penalties for which Aaron may be liable, the Commission respectfully requests that it be
allowed to simply reference "disgorgement and penalties" in the publication, in lieu of a
sum certain representing the "sum of money for which judgment may be taken." The
Commission will brief the issue of the exact amount of Aaron's monetary liability if and
when the need to do so arises.

## CONCLUSION

For the reasons stated above, the Court should enter an Order permitting the Commission to serve Aaron by email and/or publication.


Dated: New York, New York
       January 15, 2016

Judith Weinstock
Securities and Exchange Commission
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-9078
weinstockj@sec.gov