**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

SECURITIES AND EXCHANGE
COMMISSION,

           Plaintiff,                        No. 15-cv-5704(RA)

           V.

JOSHUA SAMUEL AARON, GERY SHALON,
and ZIV ORENSTEIN

           Defendants.
_____

**DEFENDANT ZIV ORENSTEIN'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR DEFAULT**
**JUDGMENT AND IN SUPPORT OF HIS MOTION**
**<u>TO DISMISS THE AMENDED COMPLAINT</u>**

Law Offices of Alan S. Futerfas
565 Fifth Avenue, 7th Floor
New York, New York 10017
Counsel for Defendant Ziv Orenstein

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted in opposition to the SEC's motion for a default judgment against Defendant Ziv Orenstein ("Mr. Orenstein") and support of Orenstein's cross-motion for dismissal of the SEC's Amended Complaint ("Amended Complaint").

The SEC claims it "served" Mr. Orenstein with the Amended Complaint[1] while he was incarcerated in Israel on a United States extradition request stemming from an indictment pending in the Southern District of New York.  In fact, Mr. Orenstein did not see the Amended Complaint until he was extradited to this country, nearly a year after the Amended Complaint was issued and allegedly served on him. The SEC cannot reasonably claim any prejudice resulting from the delay as it resulted largely from the SEC's failure to properly serve Mr. Orenstein while he was incarcerated in Israel. Further, the other two defendants have not been in the United States to appear and defend against the action until recently.

Mr. Orenstein has meritorious defenses to the three claims for relief pled in the Amended Complaint.  Indeed, not only can Mr. Orenstein defend against these claims at a trial, as we show herein, the claims as pled do not survive a motion to dismiss.   The Amended Complaint does not allege facts which sustain the elements of the three claims for relief. Instead, the Amended Complaint alleges few specifics as to Mr. Orenstein, and those are not factually sufficient to plead securities fraud.   The Amended Complaint is otherwise fatally vague in light of the heightened particularity requirements for fraud.

---

[1] The initial Complaint was filed on July 21, 2016 and amended three days later.  Only the Amended Complaint was served on the defendants.

This motion therefore respectfully requests an order (1) denying the motion to enter a default judgment against Mr. Orenstein and (2) dismissing the Amended Complaint as to Orenstein pursuant Fed R. Civ. P. 12(b)(6) and Fed R. Civ. P. 9.

## STATEMENT OF FACTS

### I.    Arrest and Criminal Case

At approximately 6 am on the morning of July 21, 2015, Mr. Orenstein was visited at his home in Israel by men identifying themselves as FBI agents. They were accompanied by Israeli police.  Mr. Orenstein was taken into custody at his home and transported to the local police office.  Later in the day, Mr. Orenstein was transported to the Nitzan Center, part of the Ayalon Prison Complex in Ramla, Israel.  He was incarcerated in that prison from July 21, 2015 until the day he was extradited to the United States on or about June 8, 2016.  This arrest was based on charges contained in a sealed indictment originally filed by the United States Attorney's Office in June 2015. *See generally* S.D.N.Y. Dkt. No. 15-cr-333.  The indictment was unsealed on July 21, 2015, the day of Mr. Orenstein's arrest in Israel.

### II.    Filing & Purported Service of Instant Complaint

On the same day that the indictment was unsealed, July 21, 2015, Mr. Orenstein was named in a separate civil action filed by the SEC. *See* S.D.N.Y. Dkt. No. 15-cv-5704 at entry dated July 21, 2015, doc 1 (Complaint).  The complaint was subsequently amended on July 24, 2015. *See id.* at entry dated July 24, 2015, doc 11 (Amended Complaint).  The SEC avers that in August 2015 it forwarded the Amended Complaint to the "appropriate authorities in Israel" for service on Mr. Orenstein, and subsequently "received a Certificate from the Israeli authorities, which stated that Orenstein had been served on September 19, 2015." *See id.* at entry dated Sept. 9, 2016, doc 43 (Affidavit in Support of Motion for Default Judgment), ¶¶ 4-5.  The Amended Complaint was "served" by sending a copy of it in an envelope addressed to Mr. Orenstein at the

post office near his home. The community in Israel where Mr. Orenstein's house is located receives its mail at the local post office. A notice was left at a P.O. Box adjacent to the post office. The notice indicated that there was a package at the post office for pick up. Sagit Orenstein went to the post office, signed a form, and received the envelope containing the Amended Complaint.  The Hebrew document says that, "in the absence of Ziv Orenstein, I gave it to Sagit Orenstein." At this time, Mr. Orenstein had already been in prison for several months – a fact clearly known to the Israeli police and the United States government. When Sagit Orenstein opened the mail, she assumed, as did Mr. Orenstein when he heard about them, that the papers related to the criminal case, given the almost identical dates of filing and the charges of securities fraud.

Upon his incarceration, Mr. Orenstein (and Sagit Orenstein) understood and were advised that the prison did not allow inmates' families to send papers via mail or give papers to the inmates during personal visits. At the beginning of his incarceration, Mr. Orenstein was not allowed access to the phone or to have visitors.  Even when those restrictions were lessened, given three children at home, Sagit Orenstein was only able to visit once every 6 to 8 weeks, and the visits were restricted to 30 minutes. Most of the visits were with his small children.

From the time of his arrest in Israel on July 21, 2015, through his Israeli incarceration, and until his extradition to the United States on June 8, 2016, Mr. Orenstein was never served with the Amended Complaint. Mr. Orenstein did not see it, read it or possess it until he was in the United States.

III.    **Allegations of Amended Complaint**

The 19-page Amended Complaint alleges five claims for relief, with the second, third and fifth claims of relief naming Mr. Orenstein. The essence of the allegations is that Aaron and

Shalon orchestrated a series of "pump and dump" schemes involving the stocks of six companies, and that Mr. Orenstein allegedly helped Aaron and Shalon by taking care of related "back-office" duties.   The Amended Complaint makes summary and conclusory allegations against Mr. Orenstein, *see, e.g.* Amended Complaint at ¶ 2 ("During 2011 through 2012, defendants Aaron and Shalon unlawfully promoted, and with defendant Orenstein, unlawfully schemed to defraud investors[.]"); ¶ 21 ("Orenstein handled back-office duties[.]"). It alleges a few specific facts which are not sufficient to tie Mr. Orenstein to the alleged stock manipulations.

There were six alleged "pump and dump" schemes pled in connection with microcap issuers. *See id.* at ¶ 2. Evident from a careful reading of the Amended Complaint is that it alleges facts suggesting Mr. Orenstein's involvement in two of these manipulations. As to those two, the Amended Complaint alleges that:

> (1) In connection with a company called NGMC, prior to Aaron and Shalon's sale of the stock of that company, Aaron "emailed Orenstein in connection with the acquisition of NGMC shares and asked Orenstein to look into the status of those shares." *See id.* at ¶ 42.

The record will show that in the summer of 2011, Aaron emailed Mr. Orenstein requesting that he inquire about how many shares of NGMC were cleared in an account. Shortly thereafter, Mr. Orenstein sent Aaron's request to Shalon because Mr. Orenstein did not have the requested information or access to the information. Shalon eventually sent the request to a broker. The broker responded to Shalon and Mr. Orenstein that he received the inquiry and would respond. Mr. Orenstein does not know if the broker responded. If the broker provided a response, Mr. Orenstein was not included on the email or in any other communication. Mr. Orenstein had no understanding that this inquiry related to a stock manipulation by Aaron and Shalon.

The Amended Complaint also alleges that:

(2) As to the alleged "pump and dump" in connection with a company called BRND, prior to the allegedly fraudulent promotion one of Mr. Orenstein's co-defendants "emailed Orenstein about the name of an entity to use in connection with the promotion, and Orenstein replied 'Realto Investments.'" *Id.* at ¶ 56.

The record will show that in or about October 2012, Aaron asked Mr. Orenstein for the name of a company. The inquiry did not reference BRND or any other company. Mr. Orenstein asked Aaron for additional details, including the purpose of the company. Without advising as to the purpose of the company, Aaron stated that he just needed a valid company without negative information. Sometime later, Mr. Orenstein asked Aaron if the company would need a bank account and Aaron replied that it would not. Thereafter, Shalon and Mr. Orenstein discussed providing Aaron with a BVI company.[2] Mr. Orenstein eventually requested Shalon's approval for a company to be provided to Aaron. Shalon agreed that a company called Realto Investments could be provided to Aaron.  Following that approval, Mr. Orenstein corresponded with Aaron and provided the name of the company requested, Realto Investments, Ltd.

Paragraph 56 of the Amended Complaint implies that Mr. Orenstein had information that the entity he was asked to identify was to be used "in connection with the promotion" of BRND. At no point was Mr. Orenstein made aware that the company being sought was to be used in connection with the illegal promotion of a stock. A trial would show that Mr. Orenstein did not know the purpose for which Aaron was requesting a company, and did not understand that the company was to be used in a stock manipulation.

---

[2] The Indictment, 15 CR 333 (S-1), alleges significant business activities between Mr. Orenstein and Shalon which have nothing to do with stocks or stock manipulation.

The overwhelming majority of the factual allegations of the Amended Complaint concern the alleged activities of Aaron and Shalon, not Mr. Orenstein, to wit:

> (1) Aaron and Shalon (not Mr. Orenstein) engaged in a promotion of the company, including via websites and sending out emails, *see id.* at ¶¶ 24-25, 30-31, 36-37, 43-44, 48-49, and 54-55;

> (2) Aaron and Shalon (not Mr. Orenstein) included misleading disclaimers in their promotional websites and/or emails that they held a position in the company which they were promoting and may sell such stock, or failed to disclose that they had a position in the company, when in fact Aaron and Shalon (not Mr. Orenstein) in each instance did, and intended all along, to sell all of their positions as soon as the stocks were promoted and the price and volume traded of the stock increased, *see id.* at ¶¶ 26-27, 32-33, 38-40, 45, 50-51, and 56-57;

> (3) During and immediately following the promotional campaign, which was orchestrated by Aaron and Shalon (not Mr. Orenstein), the price and trading volume of the company which was the alleged target of the "pump and dump" scheme increased dramatically, *see id.* at ¶¶ 28, 34, 41, 46, 52, 58; and

> (4) Aaron and Shalon (not Mr. Orenstein) took advantage of the temporary increase in price and liquidity by selling large volumes of the company's stock and profited in the five to seven figure range from each sale, *see id.* at ¶¶ 29, 25, 42, 47, 53, 59.

There is little detail in the Amended Complaint regarding Mr. Orenstein because he was not involved in or aware of the alleged manipulation schemes, and had he no stock positions in the companies which were the alleged subjects of the manipulation.  The SEC does not allege that Mr. Orenstein held any of the securities of the subject companies.

The Amended Complaint at times uses the generic term "defendants" to describe an allegation that the SEC attempts to attribute to all defendants, including Mr. Orenstein. But as we show herein, those efforts to tarnish Mr. Orenstein with a broad brush are transparent and ineffective. Mr. Orenstein did not share in any of the proceeds of the alleged stock manipulations, a fact over which the SEC elides. For example, paragraph 29 of the Amended Complaint refers to the "defendants" as having received $300,000 in proceeds. But while Mr.

Orenstein is a "defendant," he did not receive any of the proceeds of the stock manipulations. The Amended Complaint at, *inter alia*, paragraph 29, tacitly admits the same by providing details of how the proceeds were allegedly deposited in accounts traceable to Aaron and Shalon – not to Mr. Orenstein.

## ARGUMENT

## POINT ONE

## THE SEC'S MOTION FOR A DEFAULT JUDGMENT SHOULD BE DENIED

### I.  JUDGMENTS BY DEFAULT ARE DISFAVORED AND ONE SHOULD NOT BE ENTERED IN THIS CASE

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules ... the clerk shall enter the party's default." After a default has been entered against a defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment. Fed.R.Civ.P. 55(b)(2). Simply because a party is in default, however, does not mean that the plaintiff is entitled to a default judgment as a matter of right. *See Buttnugget Publ'g v. Radio Lake Placid, Inc.*, 807 F. Supp. 2d 100, 106 (N.D.N.Y. 2011) *citing Erwin DeMarino Trucking Co. v. Jackson,* 838 F.Supp. 160, 162 (S.D.N.Y. 1993).

The procedural posture of this case is that while the Clerk's office has entered a default pursuant to Federal Rule of Civil Procedure 55(a), the Court has not entered a default judgment pursuant to Fed.R.Civ.P. 55(b)(2). By the instant motion, the SEC seeks entry of a default judgment (as opposed to simply a "default"). That request should be denied.

'"It is well established that default judgments are disfavored. A clear preference exists for cases to be adjudicated on the merits."' *In re WorldCom, Inc.*, 2007 WL 735021, at *6 (Bankr. S.D.N.Y. Mar. 9, 2007) *quoting Pecarsky v. Galaxiworld.com, Ltd.,* 249 F.3d 167, 174 (2d Cir.2001); *see Liu v. Bureau of Citizenship & Immigration Servs,* 2007 WL 756518, at *1 (S.D.N.Y. Feb. 20, 2007) *quoting Pecarsky v. Galaxiworld.com, Ltd.,* 249 F.3d 167, 174 (2d Cir.2001) (same). "In determining whether to enter a default judgment, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort." *Buttnugget Publ'g*, 807 F. Supp. 2d at 106 *citing Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981).

In determining whether to set aside a defendant's default, the court should consider three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Powerserve Intern, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2011). The court may also consider relevant equitable factors, including whether the failure to appear was "a mistake made in good-faith and whether the entry of default would bring about a harsh or unfair result." *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

"[C]ourts apply the factors more rigorously in the case of a default judgment ... because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Id.* As no default judgment has been entered in this case, the use of the more lenient standard of Rule 55(c) is appropriate. Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause." Good cause "should be construed generously." *See id.* In considering a Rule 55(c) motion to set aside the clerk's entry of default, "all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the

extent possible, disputes are resolved on their merits." *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005).

In this case, all three factors weigh heavily in favor of denial of the request for a default judgment. This is not one of those "rare instances" where a judgment by default is appropriate. It is, instead, an instance where ineffective service on a defendant incarcerated abroad is being relied on to suggest a procedural technical lapse thus justifying a default judgment. Given these circumstances and the fact that the Amended Complaint is insufficient as to Mr. Orenstein and should be dismissed, *see* Point V, *infra,* the request for a default judgment should be denied.

## II.    THE DEFAULT WAS NOT WILLFUL

"Willfulness requires a showing of bad faith or deliberate default on the part of the defaulting party, and does not 'include careless or negligent errors.'" *Halo v. City of New York*, 2005 WL 289535, at *1-*2 (S.D.N.Y. Feb. 4, 2005) *citing Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60-61 (2d Cir. 1996). As also noted above, "[s]trong public policy favors resolving disputes on the merits." *See id.* In light of this strong public policy, the Second Circuit has found that:

> Although courts have an interest in expediting litigation, abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct. . . . The subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not

*Id.*

Here, there was no bad faith or deliberate default by Orenstein. The SEC avers that Mr. Orenstein was "served" on September 19, 2015. *See* S.D.N.Y. Dkt. No. 15-cv-5704 at entry dated Sept. 9, 2016, doc. 43 (Aff. in Support of Default Judgment) at ¶ 5. However, that "service" appears to have been the mailing of the Summons and Amended Complaint to Mr. Orenstein at his home address in September 2015. By then, Mr. Orenstein was not living at his

home, but was in an Israeli prison (for several months already) by virtue of the extradition request of the United States government. Mr. Orenstein was arrested on the extradition demand on July 21, 2015. Mr. Orenstein was not told that he had been named in a lawsuit filed by the SEC against him. The SEC's attempted "service" of the Amended Complaint on Mr. Orenstein – apparently limited to having Israeli officials send it in the mail to his home address while he known to be in prison - was ineffective and insufficient. The first time Mr. Orenstein saw the Amended Complaint was after he came to the United States.

"Federal Rule of Civil Procedure 4(f) governs service upon individuals in a foreign country[.]" *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005). Rule 4(f)(1) indicates that "[u]nless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served at a place not within any judicial district of the United States . . . by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed.R.Civ.P. 4(f)(1).

Both Israel and the United States are signatories to the Hague Convention. *Papir v. Wurms*, 2005 WL 372061, at *3 (S.D.N.Y. Feb. 15, 2005). Therefore, the Hague Convention governs service of process. *Burda Media*, 417 F3d 299–300. ("Here, both the United States and France are signatories to the Hague Convention, and thus service of process on a defendant in France is governed by the Hague Convention.") Hague Convention Art. 1; and Fed.R.Civ.P. 4 advisory committee's note. The Hague Convention of 1965 was intended "to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to

the notice of the addressee in sufficient time." *Burda Media*, 417 F.3d 300 quoting the Hague Convention, Preamble.

"In addition to the Hague Convention, service must also satisfy constitutional due process." *Fallman*, 2016 WL 5875031, at *4 *citing Ackermann v. Levine*, 788 F.2d 830, 838 (2d Cir. 1986); *see also Burda Media*, 417 F3d at 303 ("Finally, in addition to the Hague Convention, service of process must also satisfy constitutional due process.") Due process requires "notice reasonably calculated ... to apprise interested parties of the pendency of the action." *Burda Media*, 417 F. 3d at 303, *quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); and *Fallman*, at *4 (same).

Article 5(a) of the Hague Convention permits service to be made by the Central Authority of the country in which service is requested "'by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory.'" *Fallman* at *3 quoting the Hague Convention, Art. 5. This is a three step process by which: first, the process is attached to a request and then sent to the Central Authority designated by the signatory country in which the defendant is located (Hague Convention, Art 3); second, the Central Authority must serve or attempt to serve the defendant with the process (*id.*, Art. 5); and third, the Central Authority must forward to the applicant a completed certificate with the details of how the process was served (*id.*, Art. 6); *see also Burda Media*, 417 F. 3d at 300.

The SEC sent to Israel's Administration of Courts "the summons and complaint, ECF Rules, Judge Abrams' individual rules and practices, and notices of appearance" with the Request for Service Abroad of Judicial or Extrajudicial Documents ("Request for Service"). Declaration of Kristine Zaleskas dated Dec. 14, 2015 ("Zaleskas Declaration") and Exhibit A to the Declaration of Kristine Zaleskas dated Dec. 14, 2015 ("Exhibit A"). Notwithstanding the fact

that the SEC knew that Mr. Orenstein was incarcerated in Israel, the Request for Service does not indicate that Mr. Orenstein was incarcerated.  Rather, it merely indicates the address at which he lived before he was incarcerated, and had been so for two months. *See Fallman*, 2016 WL 5875031, at \*4 (holding that Plaintiff did not meet his burden of proving service where it was "undisputed that the Certificate lists an incorrect address, one at which [Defendant] does not live or work, as the place at which [Defendant] was served. The Certificate, if anything, establishes *prima facie* evidence that service was not completed properly.  Further, this error is not a mere technicality, but is material; purported service at the wrong address is not service[]" and noting that "Service at the wrong address is not a technical error that can be overlooked[.]")

### III.   THE SEC WILL EXPERIENCE NO PREJUDICE IF THE DEFAULT IS SET ASIDE

"[D]elay standing alone does not establish prejudice." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993).  "The non-defaulting party must show prejudicial delay by proving that the 'delay will result in the loss of evidence, create difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Bryan v. Butler*, 163 F.R.D. 175, 177 (N.D.N.Y. 1995) *quoting Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983).  The plaintiff must demonstrate that the default caused some actual harm to its ability to litigate the case.  *See MacEwen Petroleum, Inc. v. Tarbell*, 173 F.R.D. 36, 39-40 (N.D.N.Y. 1997), *citing Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 657 (3rd Cir.1982).

It is difficult to imagine a situation in which there is less prejudice to the plaintiff. Two of the SEC defendants have recently arrived in the United States. Shalon arrived approximately when Mr. Orenstein did in June 2016 and co-defendant Joshua Aaron arrived in the United States from Russia just weeks ago on December 15, 2016.  There is no suggestion that the SEC, much less this Court, was willing to proceed piecemeal with litigation with three separate timetables

for each of the three defendants – particularly where all defendants, as of December 15, 2016, are now in the United States.

Much of the delay was a product of the SEC's service and approach. Moreover, although there has been a delay, for much of that time, Mr. Orenstein was in prison in a foreign country. Lastly, the Amended Complaint centers on allegations of stock manipulation in 2011 and 2012 – a relatively recent period of time in the context of most litigations. This context is especially true here since most, if not all, of the evidence supporting the SEC's allegations apparently arises from email communications and other documentary evidence. This is not a case relying on witnesses being asked to recall events from decades ago.

## IV.    ORENSTEIN HAS A MERITORIOUS DEFENSE TO EACH OF THE THREE CLAIMS FOR RELIEF IN WHICH HE IS NAMED BY THE AMENDED COMPLAINT

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) *quoting Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir.1988). Whether a defense is meritorious "is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 98 (2d Cir.1993). This standard applies regardless of whether there has been an evidentiary hearing or an opportunity for discovery. *See Halo v. City of New York*, 2005 WL 289535, at *1–2 (S.D.N.Y. Feb. 4, 2005).

Mr. Orenstein is named in three of the five alleged causes of action:

A.    The Second Claim for Relief – Violating Sections 17(a)(1) and 17(a)(3) of the Securities Act

B.    The Fourth Claim for Relief – Violating Section 10-5(a) of the Exchange Act and Rules 10b-5(a) and 10b-5(c)

C.   The Fifth Claim for Relief – Aiding and Abetting Violations of Exchange
     Act Section 10(b) and Rule 10b-5 and Securities Act Section 17(a)

As to the Second Claim for Relief, Section 17(a) of the Securities Act prohibits fraud in the offer or sale of securities, using the mails or the instruments of interstate commerce. Section 17(a) (1) forbids the direct or indirect use of any device, scheme, or artifice to defraud.   Section 17(a) (3) proscribes any transaction or course of business that operates as a fraud or deceit upon a securities buyer.   *S.E.C. v. Yorkville Advisors, LLC*, 2013 WL 3989054, at *2 (S.D.N.Y. Aug. 2, 2013).

The Amended Complaint paints with broad word strokes to create the impression that the fraudulent scheme involves Mr. Orenstein.   However, the trial evidence would show that Mr. Orenstein was not involved directly or indirectly with any device, scheme or artifice to defraud, nor did Mr. Orenstein have any knowledge that such a scheme was taking place.   The specific acts alleged against Mr. Orenstein do not show, much less establish, fraudulent intent.

For example, paragraph 42 of the Amended Complaint states that prior to the sales of stock in a company called NGMC, "Aaron emailed Orenstein in connection with the acquisition of NGMC shares and asked Orenstein to look into the status of these shares."   As discussed in detail on p. 4 *supra*, the trial evidence would show that Mr. Orenstein had no knowledge of a planned manipulation of that company's stock. Sometime in the summer of 2011, Mr. Orenstein merely relayed an inquiry from Aaron to Shalon in which Aaron wanted to know how many shares of NGMC were in an account.   Aaron never followed up on the request.

Similarly, paragraph 56 of the Amended Complaint alleges that prior to the promotion of BRND stock, Aaron emailed Mr. Orenstein about the name of an entity to use in connection with the promotion.   As discussed in detail *supra* on p. 5, the trial evidence would show that there was

no reference to BRND. Mr. Orenstein was asked to provide the name of a company and was provided with no information with respect as to how or for what purpose Aaron was planning to use the company. Mr. Orenstein did not know that the requested company would be used by Aaron for a stock manipulation.

Among the sparse allegations that involve Mr. Orenstein are the averments in the Amended Complaint that websites were purchased and maintained as part of the fraudulent promotion of the stocks. *See, e.g.*, Amended Complaint at ¶¶ 1, 17, 21, 24, 31, 36. The trial evidence would show that Mr. Orenstein's minimal involvement in the website purchases was: 1) Aaron sent requests to Mr. Orenstein for website purchases, which requests included specific instructions as to which websites to buy, how much to spend and other minutiae; 2) Mr. Orenstein then passed the requests along to Shalon; and 3) Shalon in turn reviewed the requests and, if he approved them, sent instructions to make the purchases. The trial evidence would show that Mr. Orenstein was not involved in the content, design or other functionality of the websites, or the actual purchase and maintenance of the websites.

In short, the Amended Complaint's few allegations of specific conduct by Mr. Orenstein do not involve him in the fraudulent offering or sale of securities through the use of the mails or the instruments of interstate commerce under Sections 17(a)(1) or (a)(3).

As to the Fourth Claim for Relief, "[t]o have violated Section 10(b) and Rule 10b–5, [Orenstein] must have: (1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999) *citing S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1467 (2d Cir.1996). These are

"[e]ssentially the same elements" as "required under Section 17(a)(1)-(3) in connection with the offer or sale of a security[.]" *See id.* As the Second Circuit has found:

> In order to establish primary liability under § 10(b) and Rule 10b–5, a plaintiff is required to prove that in connection with the purchase or sale of a security the defendant, acting with scienter, made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device. Scienter, as used in connection with the securities fraud statutes, means intent to deceive, manipulate, or defraud, or at least knowing misconduct. . . With respect to § 17(a)(1), essentially the same elements must be established in connection with the offer or sale of a security.

*S.E.C. v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1467 (2d Cir. 1996). For the same reasons stated above as to the Section 17 violations, there is a meritorious defense to the 10(b) and 10b-5 allegations.

As to the Fifth Claim for Relief, for Mr. Orenstein to be liable for aiding and abetting a primary securities-law violation, the SEC "must prove: (1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *United States Sec. & Exch. Comm'n v. Mudd,* 2016 WL 815223, at *6 (S.D.N.Y. Feb. 29, 2016) *quoting S.E.C. v. DiBella,* 587 F.3d 553, 566 (2d Cir. 2009). Evidence presented at a trial would show that the SEC cannot establish either element (2) or (3).

As for element (2), Mr. Orenstein had no knowledge of the alleged stock manipulation. As for element (3), "substantial assistance," the SEC must show Mr. Orenstein "'in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, [and] that he [sought] by his action to make it succeed.'" *S.E.C. v. Apuzzo,* 689 F.3d 204, 206 (2d Cir. 2012) *quoting United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938). Trial evidence would show that Mr. Orenstein had no "wish to bring about" the alleged "pump

16

and dumps," nor did he seek by his actions to "make them succeed."  The evidence would show that he did not own any stock in the six microcap companies; that he was not privy to information or discussion regarding the illegal stock manipulation; and that he did not make any money from the stock sales.

POINT TWO

**THE AMENDED COMPLAINT SHOULD BE DISMISSED**

Not only should the SEC's motion seeking a default judgment be denied, the Amended Complaint should be dismissed.  The Amended Complaint does not establish the elements of the three claims for relief, nor do the three causes of action meet the heightened standard for pleading required by Fed R. Civ. P. 9.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In applying this standard of facial plausibility, the court should not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Harris v. Mills,* 572 F.3d 66, 71-72 (2d Cir. 2009).  Thus, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *See Twombly*, 550 U.S. at 555.

As to the Second Claim for Relief, section 17(a) of the Securities Act prohibits fraud in the offer or sale of securities, using the mails or the instruments of interstate commerce. Section 17(a)(1) forbids the direct or indirect use of any device, scheme, or artifice to defraud.   Section 17(a) (3) proscribes any transaction or course of business that operates as a fraud or deceit upon

17

a securities buyer.  *S.E.C. v. Yorkville Advisors, LLC*, 2013 WL 3989054, at *2 (S.D.N.Y. Aug. 2, 2013).  The Amended Complaint does not allege facts to support a claim that Mr. Orenstein made use of any device, scheme or artifice to defraud, nor does it allege facts to support a claim that he was part of a transaction or course of business that operated as a fraud or deceit upon a securities buyer.

As to the Fourth Claim for Relief of a violation of Section 10(b) and Rule 10b–5, the SEC must plead that Mr. Orenstein "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities."  *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999) c*iting S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1467 (2d Cir.1996).  The Amended Complaint does not allege facts to support a claim that Mr. Orenstein made a material misrepresentation or used a fraudulent device in connection with the sale of securities. Nor does the Amended Complaint allege facts sufficient to show that Mr. Orenstein acted with the requisite scienter.

As to the Fifth Claim for Relief, the SEC needs to plead, "(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation."  *United States Sec. & Exch. Comm'n v. Mudd*, 2016 WL 815223, at *6 (S.D.N.Y. Feb. 29, 2016) *quoting S.E.C. v. DiBella*, 587 F.3d 553, 566 (2d Cir. 2009).  The SEC does not plead any facts indicating that Mr. Orenstein had knowledge of violations of the securities laws by Aaron and Shalon, or that the "pump and dump" scheme was something he wished to bring about and make succeed.

As to all three of the claims of relief, the Amended Complaint alleges so few actions by Mr. Orenstein that none of the claims are plausible on their face. The portion of the Amended Complaint specifically listing the claims for relief include merely insufficient formulaic recitations of the elements.

In addition to the failure to plead claims which meet the requirements of Fed R. Civ. P. 12(b)(6), the Amended Complaint also falls short of the heightened specificity standard necessary to sustain the three fraud-based claims for relief in which Mr. Orenstein is named. When, as here, a litigant alleges fraud, Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud . . . shall be stated with particularity." Fed.R.Civ.P. 9(b). As the Second Circuit explained in *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993):

> The specificity required by Rule 9(b) is distinct from Rule 8(a)'s liberal 'plain statement' rule. This distinction serves several purposes, [including] "to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based," *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990) (citations omitted); *see also O'Brien v. National Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991) [and] "[to] safeguard[ ] defendant's reputation and goodwill from improvident charges of wrongdoing[.]" *Ross v. Bolton*, 904 F.2d at 823 (citations omitted); *see also O'Brien*, 936 F.2d at 676.

Simply put, "'conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough.'" *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982) *quoting Segal v. Gordon*, 467 F.2d 602, 606-08 (2d Cir. 1972).

Additionally, "[i]n cases with multiple defendants," like the instant action, "Rule 9(b) requires that the complaint allege facts that specify each defendant's connection to the fraud. General allegations against a group of defendants are insufficient." *Schmidt v. Fleet Bank*, 1998 WL 47827, at *5 (S.D.N.Y. Feb. 4, 1998) *citing Mills v. Polar Molecular Corp.*, 12 F.3d 1170,

1175 (2d Cir.1993); *see also* 2 James Wm. Moore et al., *Moore's Federal Practice* § 9.03[1][f]

at 9-25 (3d ed. 2009) (collecting cases).   As the Southern District explained:

> Rule 9(b) requires plaintiffs to "connect the allegations of fraud to each individual
> defendant." *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. De–Con
> Mechanical Contractors, Inc.*, 896 F.Supp. 342, 347 (S.D.N.Y.1995); *see also
> Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993) ("Rule 9(b) is
> not satisfied where the complaint vaguely attributes the alleged fraudulent
> statements to 'defendants.'"). Plaintiffs alleging fraud "may not rely on sweeping
> references to acts by all or some of the defendants because each named defendant
> is entitled to be apprised of the facts surrounding the alleged fraud." *Trustees of
> Plumbers and Pipefitters Nat. Pension Fund*, 896 F.Supp. at 347.

*Holmes v. Allstate Corp.*, 2012 WL 627238, at *23 (S.D.N.Y. Jan. 27, 2012).

"Because fair notice is perhaps the most basic consideration underlying Rule 9(b), the

plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the

scheme." *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1381 (11th Cir. 1997) *quoting

Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (internal

citations and quotations omitted).   As such, "in a case involving multiple defendants ... 'the

complaint should inform each defendant of the nature of his alleged participation in the fraud.'"

*Id.*   "Courts have . . . found that complaints have failed to satisfy the particularity requirements

of Rule 9(b) where . . . they only vaguely attribute[d] the alleged fraudulent statements to

'defendants.'"   *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.,* 770 F.Supp.2d 497,

527 (E.D.N.Y. 2011) *quoting Mills v. Polar Molecular Corp.*, 12 F.3d at 1175–76.   "[W]hen a

fraud claim is made against multiple defendants, . . . a plaintiff is obligated to state, with

particularity, the acts [and] omissions complained of by each defendant. General allegations

made against multiple defendants do not satisfy the pleading requirements of [Rule] 9(b)."

*Rafter v. Bank of America,* 2009 WL 691929, at *12 (S.D.N.Y. Mar. 12, 2009) (internal

quotations omitted).   "'[L]umping' all defendants together fails to satisfy the particularity

requirement." *In re Crude Oil Commodity Litigation,* 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007) *quoting Simon v. Castello*, 172 F.R.D. 103, 105 (S.D.N.Y. 1997).

Time and again the Amended Complaint refers to "defendants" without specifying which of the defendants engaged in specific acts constituting the allegations. *See* Amended Complaint at ¶¶ 17-18, 20, 22-24, 27, 30, 33, 36, 40, 43, 45, 47, 48, 50-51, 53-54, 57, 59. A careful reading of the Amended Complaint reveals that it includes only a handful of references to actual acts by Mr. Orenstein, and the vast majority of the allegations concern Aaron and Shalon. Moreover, even the few specific acts attributed to Mr. Orenstein do not establish the requisite scienter or the other elements of the charges, and there is nothing in those allegations which tie Mr. Orenstein to the promotional activities, misleading disclaimers and self-advantageous transactions alleged to have been conducted by Aaron and Shalon.

## CONCLUSION

For all the reasons stated herein, it is respectfully requested that the Court deny the SEC's motion for a default judgment and dismiss the Amended Complaint.

Dated: February 3, 2017
      New York, New York

                                        Law Offices of Alan S. Futerfas

By: _____
                     Alan S. Futerfas
                     565 5th Avenue, 7th Floor
                     New York, New York 10017
                     (212) 684-8400
                     *Attorney for Defendant Ziv Orenstein*