UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

SECURITIES AND EXCHANGE COMMISSION

- v. -

JOSHUA AARON,
GERY SHALON, and
ZIV ORENSTEIN,

Defendants.

-----------------------------------------------------------------------X

15 Civ. 5704 (RA)

**THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION TO INTERVENE AND FOR A STAY**

JOON H. KIM
Acting United States Attorney for the
Southern District of New York
Attorney for the United States of America.

Noah Solowiejczyk
Eun Young Choi
Assistant United States Attorneys

- *Of Counsel* -

**PRELIMINARY STATEMENT**

The United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of its application (i) to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (ii) for a complete stay of this matter until the conclusion of the parallel criminal case, *United States* v. *Gery Shalon, et al.*, 15 Cr. 333 (LTS) (the "criminal action").

Based on the Government's discussions with the Securities and Exchange Commission (the "SEC"), the Government understands that the defendants in this case consent to a stay pending the conclusion of the criminal action.[1] The SEC takes no position with respect to the Government's motion for a stay.

Courts in this Circuit frequently enter a complete stay of civil actions prior to the commencement of any discovery when there is a parallel criminal prosecution with overlapping defendants and overlapping facts, as is the case here. *See, e.g., SEC* v. *Shkreli, et al*., 15 Civ. 7175 (KAM), Dkt. No. 33 (E.D.N.Y. Mar. 22, 2016) (granting a complete stay of discovery pending the outcome of the criminal proceedings); *Harris* v. *Nassau County et al.*, 2014 U.S. Dist. LEXIS 94554 at *10 (E.D.N.Y. 2014) (noting that "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment.") (*citing In re Par Pharm. Sec. Litig*., 133 F.R.D. 12 (S.D.N.Y. 1990)); *SEC* v.

---

[1] During an August 8, 2017 status conference in this action, defense counsel for Defendant Orenstein indicated that "we . . . certainly would consent and be fine with any stay because of [the criminal action] you mentioned. We believe that's the best course of action at this time. . . . [I]n the event the criminal division of the U.S. Attorney's Office is planning to move for a stay, we would not be opposing that, and we would be consenting to it." (8/8/17 Tr. at 13-14). *See also* Dkt. No. 84, Sept. 12. 2017 Lttr. to Hon. Ronnie Abrams (noting the SEC's understanding that "defendants do not intend to oppose such a motion [for a stay].").

*Durante et al*., 15 Civ. 9874 (RJS), Dkt. No. 66 (S.D.N.Y. Mar. 23, 2016) (entering full stay of discovery over one defendant's objection). For the reasons described below, due to the significant factual overlap between the criminal action and the civil action, the Government's motion for a complete stay of should be granted.

**FACTUAL BACKGROUND**

This case, and the parallel criminal action, arise out of the same underlying events. The facts set forth below are detailed in superseding criminal indictment S1 15 Cr. 333, *United States* v. *Gery Shalon et al.* (the "Indictment"), which was unsealed on November 9, 2015, and is annexed to this memorandum of law as Exhibit A, and are also reflected in the SEC's Amended Complaint (the "SEC Complaint" or "SEC Compl.") in this civil action, which is annexed to this memorandum of law as Exhibit B.

Defendants Joshua Samuel Aaron ("Aaron") and Gery Shalon ("Shalon"), among others, engaged in a "pump-and-dump" scheme through their use of customer data that was illegally obtained by hacking various financial service companies (the "Financial Services Victims"). (SEC Complaint at ¶ 1; Indictment ¶ 16). As part of the pump-and-dump scheme, Shalon, Aaron, and other co-conspirators touted certain penny stocks to unlawfully profit from the short-term increase in the price of and trading volume of each stock that was caused as a result of their fraudulent promotional campaign. (SEC Complaint at ¶ 1; Indictment ¶ 16) Specifically, the participants in the pump-and-dump scheme urged individuals, whose contact information had been obtained from the intrusion of the Financial Services Victims, to buy shares of the promoted issuers without properly disclosing that the promoters themselves owned shares of these issuers, or that the promoters themselves intended to sell those shares immediately. (SEC Complaint at ¶ 1).

Aaron, Shalon, and others unlawfully promoted the stocks of numerous issuers in this manner. (SEC Complaint at ¶ 1 (alleging six public securities were manipulated by the defendants); Indictment ¶ 54 (charging securities fraud involving seven publicly securities).

To execute the pump-and-dump-scheme, Aaron and Shalon partnered with "promoters" who identified companies whose stock would be targeted for manipulation. (Indictment ¶ 25(a)). Prior to commencing the promotional campaign to increase the value of the targeted stock, the participants in the pump-and-dump scheme, including Aaron and Shalon in certain instances, would acquire control over all or substantially all of the free-trading shares of the targeted stock. (Indictment ¶ 25(c); SEC Complaint ¶ 18). Aaron, Shalon, and their co-conspirators would then artificially inflate the stock's price and trading volume through two methods: first, they would execute pre-arranged manipulative trades to cause the stock's price to rise small amounts on successive days and, second, they would disseminate materially misleading and unsolicited messages by various means – including by email to up to millions of recipients per day – that falsely touted the stock in order to cause others to buy the stock. (Indictment ¶ 25(d); SEC Complaint ¶ 17). Aaron and Shalon participated in the hacks of the Financial Services Victims in order to obtain customer data that was then used in the pump-and-dump scheme to send misleading promotional materials to those customers whose information had been hacked. (Indictment ¶ 25(d)).

While the promotional materials used by Aaron, Shalon, and their co-conspirators contained lengthy disclaimers, these disclaimers did not reveal that the promoters owned the stock, nor did it disclose that they intended to immediately sell their shares and profit from the increase in price and demand that their promotional campaign generated. (SEC Complaint ¶ 19). The

promotional materials used by Aaron, Shalon, and their co-conspirators in connection with the pump-and-dump scheme were frequently materially false and fraudulent in multiple respects. These promotional materials, among other things, (i) falsely stated that the stock's recent trading activity reflected legitimate demand for the stock, when in truth and fact, Aaron, Shalon, and their co-conspirators well knew that the trading activity was caused in whole or in part by their manipulative trading, and (ii) falsely stated that the promotional emails were being distributed and financed by certain third-parties, when in truth and fact, the emails were being distributed and financed by Aaron, Shalon, and their co-conspirators, who also controlled all or nearly all of the free-trading shares of the stock. (Indictment ¶ 25(d); SEC Complaint ¶ 18-19). Once the price of the stock had temporarily increased, the participants in the scheme would sell their shares in a coordinated fashion, resulting in millions of dollars in profits and exposing unsuspecting investors to significant losses. (Indictment ¶ 25(e); SEC Complaint ¶¶ 23, 29, 35, 42, 47, 53, 59).

As a result of the above-described scheme, the Indictment charges the defendants with, among other crimes, conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371 (Count Four); conspiracy to commit wire fraud in connection with a securities market manipulation scheme, in violation of Title 18, United States Code, section 1349 (Count Five); securities fraud, in violation of Title 15, United States Code Sections 78j(b) & 78ff; 17 Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2 (Counts Six through Twelve); and wire fraud in connection with the schemes to manipulate the price and trading volume of numerous publicly traded stocks, in violation of Title 18, United States Code, Sections 1343 and 2 (Count Thirteen). On or about June 9, 2016, Shalon and Orenstein, following extradition from Israel, were arraigned on the Indictment. On or about

December 14, 2016, Aaron, following his arrival from Russia, was arraigned on the Indictment.

The Amended Complaint asserts the following causes of action: (i) violations of Section 17(a)(2) of the Securities Act against Shalon and Aaron; (ii) violations of Sections 17(a)(1) and (a)(3) of the Securities Act against Shalon, Aaron, and Orenstein; (iii) violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) against Shalon and Aaron; (iv) violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and 10b-5(c) against Shalon, Aaron, and Orenstein; and (v) aiding and abetting violations of Exchange Act Section 10(b) and Rule 10b-5, and Securities Act Section 17(a) against Shalon, Aaron, and Orenstein.

## ARGUMENT

The Government's requests to intervene in this action and for a complete stay of this action until the conclusion of the criminal action should be granted. The Government's request for a complete stay should be granted at this stage of the civil case in order to avoid significant interference with the criminal case. The requested stay is on consent by all of the defendants, as noted above. Such a stay would not prejudice any of the parties to this civil action; would prevent the circumvention of important limitations on criminal discovery; and would preserve the Court's resources because many of the issues presented by the civil action will be resolved in the criminal action.

## I. THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may

as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of these provisions given the effect this civil proceeding would have on the criminal action and the identity of claims and facts between the parallel actions.

As a general rule, courts "have allowed the government to intervene in civil actions—especially when the Government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp.* v. *LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also SEC* v. *Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC* v. *Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

As an initial matter, intervention is warranted because the Government's interests in upholding the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represent the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong* v. *Uvawas*, 167 F.R.D. 83 (C.D.Cal. 1996) ("the Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the plaintiff or the defendants have this identical interest.").

Moreover, if this action were to proceed in advance of the related criminal case, it would impair and impede the Government's ability to protect its interests in the enforcement of federal

criminal law. This civil case and the related criminal case arise from the same alleged pump-and-dump scheme perpetrated by the defendants and other co-conspirators, as is described above. Holding a civil trial before a criminal trial would create the possibility that there will be two trials covering the same fraudulent acts, as the facts surrounding the defendants' perpetration of the pump-and-dump scheme are central to both this civil action and the related criminal case. This raises the probability that witnesses will be unnecessarily burdened by having to testify twice.

In light of these circumstances, the Government respectfully submits that its application to intervene should be granted.

## II. A COMPLETE STAY OF THIS ACTION IS APPROPRIATE

### A. Applicable Law

This Court has the inherent power to stay civil proceedings in the interests of justice pending the completion of a parallel criminal case. *See Kashi* v. *Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (internal citations and quotations omitted). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254 (1936)). In evaluating whether to grant such a stay, courts in this Circuit consider the following factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the

> prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest.

*See, e.g.*, *SEC* v. *Tuzman*, 15 Civ. 7057 (AJN), Dkt. No. 43, at 2 (S.D.N.Y. Mar. 1, 2016) (quoting *Louis Vuitton*, 676 F.3d at 99); *see also SEC* v. *Treadway*, No. 04 Civ. 3464 (VM) (JCF), 2005 WL 713826, at *2-*3 (S.D.N.Y. March 30, 2005) (quoting *In re Worldcom, Inc. Sec. Litig.*, Nos. 02 Civ. 3288, 02 Civ. 4816, 2002 WL 31729501, at *4 (S.D.N.Y. Dec. 5, 2002)); *see also Volmar Distrib., Inc.* v. *New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (listing similar factors).

### B. Discussion

Application of the above-stated factors here overwhelmingly weighs in favor of the stay sought by the Government.

#### *1. The Extent of Overlap*

That the criminal and civil cases involve nearly identical facts and issues weighs heavily in favor of a stay. "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues." *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Tuzman*, 15 Civ. 7057 (AJN), Dkt. No. 43 at 3 (S.D.N.Y. Mar. 1, 2016) (noting that "substantial overlap between the civil and criminal proceedings" weighs in favor of stay) (quoting *United States* v. *One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.")); *Parker* v. *Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4

(E.D.N.Y. Aug. 27, 2007).

Here, even a cursory examination of the Indictment and the Amended Complaint reveals that the alleged wrongdoing with the securities pump-and-dump scheme is essentially the same. The SEC Complaint and the Indictment describe the same alleged scheme to perpetrate a pump-and-dump scheme using the defendants' control of vast email lists. While the Indictment alleges additional criminal conduct arising from the defendants' participation in other illegal schemes, and contains additional allegations and charges related to computer hacking, both the Indictment and the SEC Complaint overlap almost entirely with respect to the securities-related allegations. With respect to the defendants' pump-and-dump scheme, the allegations in the Indictment and the SEC Complaint relate to the same participants and the same course of conduct. In short, the cases involve virtually identical facts, parties, and issues. As a result, this factor weighs heavily in favor of a stay.

***2. Status of the Criminal Case***

The return of an indictment in the criminal case is also a factor that weighs in favor of a stay. *See Tuzman*, 15 Civ. 7057 (AJN), Dkt. No. 43 at 3; *In re Par Pharm, Inc. Sec. Litig*., 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment."); *Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al.* v. *Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal

case will likely be quickly resolved."); *see also Hicks* v. *City of New York*, 268 F. Supp. 2d 238, 242 (E.D.N.Y. 2003) ("Indeed, the strongest argument for granting a stay is where a party is under criminal indictment…"). Thus, this factor also militates strongly in favor of a stay.

***3. The Interests of the Parties***

No prejudice will result from the complete stay requested by the Government. The SEC has indicated that it takes no position on the Government's motion, and, therefore, does not oppose the motion. The SEC will not be adversely impacted by a complete stay, as such a stay will allow the SEC to conserve its resources (as well as the resources of the Court) by avoiding needless duplicative litigation of many of issues presented by the civil action that may be resolved in the criminal case.

As is reflected by the fact that the defendants consent to the Government's motion for a stay, there is no prejudice that will result to the defendants by the granting of a stay. Indeed, such a stay will allow the defendants, like the SEC, to conserve resources and avoid needless duplicative litigation of issues in two separate proceedings.

***4. The Interests of the Court***

Considerations of judicial economy also weigh in favor of granting a stay. Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action. *See SEC* v. *Contorinis*, 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *SEC* v. *One or More Unknown Purchasers of Secs. of Global Indus*., 2012 U.S. Dist. LEXIS 162772, at *12 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is

likely to benefit to some extent from the Criminal Case no matter its outcome."); *Twenty First Century Corp.* v. *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). Because the criminal action's outcome will likely affect the conduct, scope, and result of the civil proceeding, thereby streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor also weighs in favor of the Government's application for a complete stay.

***5. The Public Interest***

Finally, the Government and the public have an important interest in a stay of the civil action. Rule 16 of the Federal Rules of Criminal Procedure and Title 18, United States Code, Section 3500 provide that in criminal cases, the statements of Government witnesses shall not be the subject of discovery "until said witness has testified on direct examination" at trial. Thus, in the criminal action, the defendants would not be entitled to much of the discovery that the Government is moving to stay until (or, as is the practice in this District, shortly before) trial.

The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery – restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses. *See United States* v. *Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States* v. *McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is

little more than open notice of an intention to tailor testimony to fit the statement."); *SEC* v. *Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D.Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

In *Tuzman*, for example, Judge Nathan outlined three principle Government interests justifying a stay of discovery of civil proceedings while parallel criminal proceedings are pending:

> First, broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence . . . . Second, revelation of the identity of prospective witnesses may create the opportunity for intimidation . . . . Third, criminal defendants may unfairly surprise the prosecution at trial with information developed through [civil] discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.

*Tuzman*, 15 Civ. 7057 (AJN), Dkt. No. 43, at 3-4 (S.D.N.Y. Mar. 1, 2016) (internal citations and quotations omitted).

Based on these concerns, judges in this District have frequently granted Government requests to limit discovery in a parallel civil action in order to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in the criminal proceeding. *See, e.g.*, *Tuzman*, 15 Civ. 7057 (AJN), Dkt. No. 43 (granting stay sought by Government); *SEC* v. *Beacon Hill Asset Management LLC*, 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting government's motion to stay, court noted: "[t]he principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal

cases."); *Phillip Morris Inc.* v. *Heinrich*, 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System* v. *Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'") (quoting *Campbell* v. *Eastland*, 307 F.2d 478, 487 (5th Cir. 1952)).

In sum, the public interest also weighs in favor of a stay of the civil action so as to avoid an end-run around criminal discovery restrictions that would occur were discovery permitted to proceed in this case.

* * *

In sum, and as set forth above, there is considerable overlap between the civil action before this Court and the criminal action; charges have been filed in the criminal case; there is no prejudice to the parties from the requested stay; there is a strong public interest in preventing the civil discovery rules from being used to improperly obtain discovery in the criminal case; and judicial economy is ensured by the requested stay. Therefore, the balance of factors overwhelmingly favors a stay of the civil action pending the conclusion of the criminal case.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that its application to intervene and for complete stay of this matter pending the conclusion of the parallel criminal action be granted in its entirety.

Dated: New York, New York
October 12, 2017

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By: /s/ Noah Solowiejczyk
Noah Solowiejczyk
Eun Young Choi
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-2473/2187